UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

LOUISIANA PAIN SPECIALISTS, LLC, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED

CIVIL ACTION

VERSUS

AMETROS FINANCIAL CORPORATION

NO. 25-00391-BAJ-SDJ

RULING AND ORDER

Before the Court is Defendant's **Motion To Dismiss (Doc. 4)**. Plaintiff opposes the Motion. (Doc. 6). Defendant filed a reply. (Doc. 7). For the reasons stated herein, Defendant's Motion is **GRANTED**.

## I. BACKGROUND

This case arises out of alleged underpayment of medical bills by Defendant. The following facts are taken as true for purposes of resolving the instant Motion.[1]

Plaintiff is a Louisiana-based medical care provider. (Doc. 1-1 at 1). Several of Plaintiff's patients cover their medical expenses with Medicare Set-Aside (MSA)

[1] On Rule 12(b)(6) motions to dismiss, courts may look beyond the Petition for Damages itself by considering "documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Meyers v. Textron, Inc.*, 540 F. App'x 408, 409 (5th Cir. 2013) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). Courts may also take judicial notice of certain matters, including government publications. *See, e.g., Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005) (taking judicial notice of information on a government website); *Coleman v. Dretke*, 409 F.3d 665, 667 (5th Cir. 2005) (per curiam) (taking judicial notice of a Texas agency's website). Because Plaintiff's Petition primarily discusses the structure of the complex Medicare Set-Aside government program, the Court will support its explanation of the program by reference to and judicial notice of official government publications.

accounts. (*Id.* at 1–2).[2] Defendant is an MSA administrator responsible for managing these patients' MSA accounts. (Doc. 1-1 at 1). Defendant pays medical bills to Plaintiff on behalf of these patients out of their MSA accounts. (*Id.* at 3).

There are two calculations to be made with respect to MSAs. The first calculation is the amount from a workers' compensation settlement that will be placed into an MSA account. The second calculation is the amount a medical provider is paid for services rendered to an MSA account-holding patient. When the injured worked is a Medicare beneficiary, it is recommended that he send the proposal to CMS for a voluntary review. *Workers' Compensation Medicare Set-Aside Arrangement (WCMSA) Reference Guide* at § 4.2.

With respect to the first calculation, Defendant's website represents that in determining how much of a workers' compensation settlement to place into an MSA

[2] When an individual suffers work-related injuries, he may obtain a workers' compensation settlement. A workers' compensation MSA arrangement allocates a portion of the workers' compensation settlement to cover future, post-settlement, work-injury-related medical expenses that are covered and otherwise reimbursable by Medicare. *See, e.g., Workers' Compensation Medicare Set Aside Arrangements*, Centers for Medicare & Medicaid Services, https://www.cms.gov/medicare/coordination-benefits-recovery/workers-comp-set-aside-arrangements (last visited Sept. 17, 2026); *Workers' Compensation Medicare Set-Aside Arrangement (WCMSA) Reference Guide*, Version 4.6, July 13, 2026, at § 3.0. The goal of establishing a workers' compensation MSA arrangement is to set aside sufficient funds from the settlement to cover the total cost that will be incurred for all medical expenses otherwise reimbursable by Medicare for work-injury-related conditions during the course of the claimant's life. *Workers' Compensation Medicare Set-Aside Arrangement (WCMSA) Reference Guide* at § 3.0. These funds must be depleted before Medicare will pay for his future Medicare-covered expenses arising from the work-related injury. *See Workers' Compensation Medicare Set Aside Arrangements*. After the settlement, the set-aside funds are deposited into an MSA account and the injured individual can either self-administer his MSA or have a professional administrator administer it for him. *Workers' Compensation Medicare Set-Aside Arrangement (WCMSA) Reference Guide* at § 6.0. The administrator must establish the MSA account, pay Medicare-covered services from the MSA account, and provide CMS with a reporting of the expenditures from the MSA. *Id.*

account, the following sources are considered: applicable workers' compensation fee schedules, usual and customary charges, actual charges, treatment records, medical bills, and facility or provider's fees. (Doc. 1-1 at 3). Plaintiff alleges that despite using workers' compensation fee schedules to calculate the amount needed to fund an MSA, Defendant pays medical providers at rates lower than workers' compensation fee schedule rates. (*Id.* at 4). With respect to the second calculation, Defendant's website represents to medical providers that "if [a] patient has a [w]orkers' [c]ompensation injury, we will pay according to your state Workers' Compensation Fee Schedule or below."[3] (Doc. 6 at 7).

Plaintiff alleges that Defendant should pay medical providers rendering services to MSA account-holding patients at the workers' compensation fee schedule rates. (Doc. 1-1 at 4).

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint against the legal standard set forth in Federal Rule of Civil Procedure 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

[3] Although this statement from Defendant's website is not present in, or attached to, the Petition, the Court may nonetheless consider it in this Ruling. Courts may consider "documents incorporated into the complaint by reference or integral to the claim. . . ." *Meyers*, 540 F. App'x at 409. Here, the representation Defendant made as to the amount it would pay medical providers is integral to Plaintiff's claim that Defendant underpaid Plaintiff.

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 556 U.S. at 679.

"[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). Hence, the complaint need not set out "detailed factual allegations," but something "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" is required. *Twombly*, 550 U.S. at 555. When conducting its inquiry, the Court "accepts all well-pleaded facts as true and views those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010) (quotation marks omitted).

## III. DISCUSSION

### A. Whether Plaintiff Has Stated A Viable Cause Of Action.

Plaintiff alleges that it "did not receive any payment [] or received insufficient and/or reduced payments within the last three year[s] which did not comply with the Louisiana Workers' Compensation rate schedule." (Doc. 1-1 at 3). It also alleges that "[d]espite using [w]orker[s'] [c]ompensation fee schedules to calculate the amount needed to fund a[n] MSA, as indicated above, Defendant [] has paid and continues to pay Plaintiff[']s Medicare rates, and/or rates that are lower tha[n] workers['] compensation fee schedule rates, for medical services rendered[.]" (Doc. 1-1 at 4).

Defendant seeks a Motion to Dismiss on multiple grounds. Central to Defendant's Motion to Dismiss is the contention that Plaintiff's Petition fails to cite any statute or regulation, any contract between Plaintiff and Defendant, or any other obligation requiring Defendant to pay Plaintiff patients' bills at the workers' compensation rate. In other words, Plaintiff fails to state any theory of liability or legal duty on the part of Defendant that would entitle it to the relief requested in its Petition. Defendant asserts that the absence of any duty or obligation on its part is fatal to Plaintiff's Petition. ("Plaintiff fails to provide a single legal authority that even so much as indicates that it must be reimbursed at the rate set out in the workers' compensation fee schedule, much less an authority that creates a cause of action for Plaintiff to recover against [Defendant].") (Doc. 7 at 1–2).

As a preliminary matter, Defendant clarifies that Plaintiff incorrectly asserts that Defendant calculates the MSA allocation based on the workers' compensation rate. Defendant claims the MSA allocation is determined by the parties to the settlement and sometimes CMS, if the parties elect for CMS to conduct a voluntary review, but that Defendant plays no role in MSA allocation. Instead, Defendant is responsible for a different calculation: how much to pay medical providers out of the MSA account, once it is established. Moreover, as CMS guidance makes clear, the workers' compensation rate is only one of many factors that parties to a settlement and sometimes CMS consider when determining the MSA allocation. But, Defendant argues, even if Defendant was responsible for calculating the MSA allocation, it does

not follow that Defendant would be required to pay patients' medical expenses at that rate. Plaintiff does not meaningfully contest this point.

**i. Whether Any Statutes Or Regulations Obligate Defendant To Reimburse Plaintiff At The Workers' Compensation Fee Schedule Rates.**

Defendant first argues that no statute or regulation requires it to pay patients' medical expenses at the workers' compensation rate. Defendant elaborates that Louisiana law requires that a medical provider be reimbursed at a workers' compensation rate only when a patient has an active workers' compensation claim. *See* La. Rev. Stat. § 23:1034.2(A) (the Louisiana workers' compensation fee schedule is "applicable to any person or corporation who renders such care, services, or treatment or provides such drugs or supplies to any person covered" under the Louisiana Workers' Compensation Act); La. Rev. Stat. § 23:1271 ("A lump sum payment or compromise settlement in exchange for full and final discharge and release of the employer, his insurer, or both from liability under this Chapter shall be allowed. . . ."); *Trahan v. Coca Cola Bottling Co. United*, 2004-0100 (La. 3/2/05), 894 So. 2d 1096, 1103– 04 (La. 2005) (La. Rev. Stat. § 23:1271 allows a lump sum payment or compromise settlement to fully and finally discharge an employer or insurer from liability under the Workers' Compensation Act). Defendant continues that an individual fully and finally settles his workers' compensation claim when his MSA is established. Therefore, the legal requirement to pay medical bills at the workers' compensation rate is inapplicable here. Moreover, Defendant asserts that the workers' compensation rate serves as the maximum rate, rather than the prescribed rate, that an injured individual with an active workers' compensation

claim must pay. *See* La. Rev. Stat. § 23:1034.2(D) ("Fees in excess of the reimbursement schedule shall not be recoverable against the employee, employer, or workers' compensation insurer"). Louisiana's workers' compensation laws expressly allow providers to charge patients with active workers' compensation claims at a rate lower than workers' compensation rates. La. Rev. Stat. § 23:1034.2(E) ("Nothing in this Section shall prevent a health care provider from charging a fee for such care, services, treatment, drugs, or supplies that is less than the reimbursement established by the reimbursement schedule").

In response, Plaintiff argues that CMS does not direct Defendant to pay medical providers using Medicare rates, as Defendant has been doing. Plaintiff also argues that Defendant has violated Section 19.3.1 of the Workers' Compensation Medicare Set-Aside Arrangement (WCMSA) Reference Guide by keeping a portion of the difference between the actual charges and the amount paid to the medical provider, rather than carrying it forward to the next period in the MSA account.[4] *See* WCMSA Reference Guide at § 19.3.1. Defendant replies that Plaintiff first makes this argument in its Opposition to the Motion to Dismiss rather than its Petition, and thus it should not be considered. But, Defendant argues, even if the Court were to consider Plaintiff's reference to Section 19.3.1, it is an argument without merit. Section 19.3.1 explains that for MSAs established as annuity arrangements, rather than lump-sum payment arrangements, unspent annuity funds should be carried into the next year;

[4] Defendant's website provides that when Defendant is "able to obtain savings off the billed amount of a bill received from a provider, [Defendant] will receive a portion of the realized savings as payment. The revenue captured by [Defendant] is a portion of the difference between what you would have paid and the amount you saved[.]" (Doc. 6 at 8).

that Section does not explain that Defendant is obliged to reimburse medical providers at the workers' compensation rate.

It is clear to the Court that Plaintiff has failed to bring a viable cause of action against Defendant. As Defendant points out, Plaintiff has not cited a single statute or regulation requiring Defendant to reimburse Plaintiff at workers' compensation rates, in either Plaintiff's Petition or in its Opposition to the Motion to Dismiss. As to Plaintiff's contention—that state laws do not require Defendant to pay medical providers at the Medicare rate—inverts the burden in this action on its head. Defendant is not required to prove that state laws do not require it to reimburse medical providers at the Medicare rate; rather, to succeed in this action, Plaintiff is required to prove that state laws require Defendant to reimburse medical providers at the higher workers' compensation rate. Accordingly, Plaintiff has failed to satisfy its pleading standard in this respect.

### ii. Whether Any Contract Obligates Defendant To Reimburse Plaintiff At The Workers' Compensation Fee Schedule Rates.

Having concluded that Plaintiff's Petition lacks mention of any statute or regulation that creates a cause of action, the Court moves to Defendant's second grounds for dismissal: Defendant has no contractual obligation to Plaintiff which creates a cause of action. Defendant argues that it never entered into a contract with Plaintiff whereby it would pay patients' medical bills at workers' compensation rates: Defendant entered into an agreement with the individuals whose MSA accounts it administers, not with Plaintiff. In other words, Defendant has an obligation to its account-holding patients, and Plaintiff also has an obligation to these patients as

their medical provider, but Defendant and Plaintiff do not have obligations to one another.

Plaintiff, in opposition, generally argues that Defendant "stands in the patient's shoes" as the administrator of his MSA account, thus contractually obligating it to Plaintiff. Defendant responds that Plaintiff's Petition "did not plead any facts that indicate it is party to a contract between Plaintiff and [Defendant], nor did it plead that it is a third-party beneficiary to a contract between [Defendant] and another party[,]" and "Plaintiff has not pled, much less established, that it has standing to assert a claim on a patient's behalf, as a third party beneficiary or otherwise." (Doc. 7 at 7–8).

The Court agrees with Defendant. Plaintiff's Petition lacks factual assertions that a contract exists between it and Defendant. Plaintiff's Petition cursorily asserts that Defendant "is justly and 'truly indebted to Plaintiff[,]'" but does not put forth any facts alleging that the two entered into an agreement that Plaintiff breached. (Doc. 1-1 at 4). Under Louisiana law, "[a] contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished." La. Civ. Code art. 1906. The party claiming the existence of a contract bears the burden of proof. La. Civ. Code art. 1831 ("A party who demands performance of an obligation must prove the existence of the obligation."). Accordingly, Plaintiff has not sufficiently pled that Defendant had a contractual obligation to it that it breached and the Court must find that there is no privity of contract here to permit recovery by Plaintiff.

Accordingly, Plaintiff's Petition lacks factual allegations and mention of legal theories which would entitle it to relief.

**B. Plaintiff's Request For Leave To Amend.**

In the alternative, Plaintiff briefly avers that it should be allowed the opportunity to amend and cure deficiencies within its Petition. ("FRCP 15(a)(2) provides that '[t]he court should freely give leave when justice so requires.' Plaintiff thus avers that if this Honorable Court were to find any deficiencies in Plaintiff's Petition (which is denied), Plaintiff should be allowed the opportunity to amend and cure said deficiencies. Plaintiff avers that a brief delay to allow it to amend the lawsuit would not cause undue prejudice to Defendant.") (Doc. 6 at 9–10).

Defendant responds that Plaintiff should not be granted leave to amend because it has failed to "set forth with particularity the grounds for the amendment and the relief sought." *Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 590 (5th Cir. 2016). Defendant also argues that an opportunity to amend would prove futile because Plaintiff has not offered any viable alternative legal theory which creates liability on the part of Defendant. *Matter of: Sherwin Alumina Co., L.L.C.*, 952 F.3d 229, 236 (5th Cir. 2020) ("[W]here amendment would be futile, the court need not grant the plaintiff leave to amend.").

Federal Rule of Civil Procedure Rule 15(a)(2) provides: "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Courts have liberally construed Rule 15(a)(2) in favor of amendment. *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594,

597 (5th Cir. 1981) ("the liberal position of the federal rules on granting amendments . . . evinces a bias in favor of granting leave to amend"). The decision to grant leave is within the sound discretion of the court. *Louisiana v. Bank of Am. Corp.*, No. CV 19-638-SDD-SDJ, 2020 WL 3966875, at *2 (M.D. La. July 13, 2020).

A "Complaint should only be dismissed under Rule 12(b)(6) after affording ample opportunity for the plaintiff to state a claim upon which relief can be granted, unless it is clear amendment would be futile." *Bauer v. AGCO Corp.*, 770 F. Supp. 3d 957, 962 (W.D. Tex. 2025) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Hitt v. City of Pasadena*, 561 F.2d 606, 608–09 (5th Cir. 1977); *DeLoach v. Woodley*, 405 F.2d 496, 496–97 (5th Cir. 1968)). Consequently, when it appears a more careful or detailed drafting might overcome the deficiencies on which dismissal is sought, a Court must allow a plaintiff the opportunity to amend the Complaint. *Bauer*, 770 F. Supp. 3d at 962 (citing *Hitt*, 561 F.2d at 608–09). However, a court may appropriately dismiss an action with prejudice without giving an opportunity to amend if it finds the plaintiff alleged his best case or if amendment would be futile. *Bauer*, 770 F. Supp. 3d at 962 (citing *Foman*, 371 U.S. at 182; *DeLoach*, 405 F.2d at 496–97).

Because Plaintiff's operative Petition fails predominately due to a dearth of causes of action, as opposed to a dearth of factual allegations, and because Plaintiff's Opposition to Defendant's Motion to Dismiss similarly proposed any viable cause of action, the Court will not grant Plaintiff leave to amend.

## IV. CONCLUSION

Accordingly, and for the reasons provided above,

**IT IS ORDERED** that Defendant's **Motion to Dismiss (Doc. 4)** be and is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's claims be and are hereby **DISMISSED WITH PREJUDICE.**

Baton Rouge, Louisiana, this 24th day of September, 2026

**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**